**In re Karl J. VALENTINE, Nancy R. Valentine, Debtors.**

**Karl J. Valentine, Plaintiff,**

**v.**

**Lane, Alton & Horst, Defendant.**

**Bankruptcy No. 00–61392. Adversary No. 01–02412.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

March 14, 2003.

Theodore R. Saker, Jr., Esq., Columbus, OH, for Plaintiff.

Yale R. Levy, Esq., Pope & Levy Co., LPA, Westerville, OH, for Defendant.

***OPINION AND ORDER ON PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT***

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on the Complaint of Karl J. Valentine, a debtor herein, to determine the dischargeability of a debt owing to the defendant, Lane, Alton & Horst. The parties waived actual trial and agreed to submit the matter to the court upon stipulated facts and briefs. They submitted their "Trial Stipulation" on October 15, 2002. The plaintiff filed his trial brief on November 18, 2002. The defendant, despite obtaining a fourteen-day extension, never filed its brief.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this district. This is a core proceeding which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(I) and (O).

The sole evidence before the Court consists of statements of fact and certain exhibits stipulated as true and authentic by the parties. The Court will refer to these stipulations as necessary in rendering its decision.

The subject of this action is a reaffirmation agreement executed by the parties

and filed with the Court on July 25, 2001. This agreement referenced a debt owed by the plaintiff to the defendant in the amount of $43,779.52, as evidenced by a certificate of judgment. The parties agreed that the plaintiff would partially reaffirm this debt in exchange for a release of the judgment lien upon final payment of the reaffirmed amount. The total amount to be repaid was $4,500.00. The agreement called for four payments of $1,125.00 each, due on the 1st day of August 2001 and the 1st day of September, October, and November thereafter.

The defendant received a personal check from the plaintiff on August 2, 2001, in the amount of $1,250.00. The defendant also received checks for the same amount on September 11, 2001, and October 1, 2001, but these checks were subsequently dishonored by the plaintiff's bank for insufficient funds. The plaintiff replaced these two checks with a certified check for $2,500.00 on November 2, 2001. As of that date, a balance of $750.00 remained on the reaffirmed debt.

On November 5, 2001, the defendant's attorney notified the plaintiff's counsel that the final payment had not been received. The following day the defendant's attorney sent a letter to the plaintiff's counsel invoking a purported clause in the reaffirmation agreement that upon the plaintiff's default, the total amount to be repaid would increase to $15,000.00. After conferring with his client, the plaintiff's attorney telephoned the defendant's counsel on November 7, 2001, and offered to send $750.00 in full performance of the reaffirmation agreement. The defendant's counsel sent a letter that same day refusing the $750.00 payment and demanding $11,250.00 instead.

The clause in question states that "[i]f Creditor defaults on any of the terms and conditions of this Reaffirmation Agree-

ment, the amount of fifteen thousand dollars and no cents ($15,000.00) shall be deemed to have been reaffirmed by the Debtor and the Creditor shall be permit [sic] to immediately commence collection actions . . . on the entire outstanding balance." The defendant has not asked this Court to reform the reaffirmation agreement to comport with any intention by the parties that it is the Debtor's default, and not the Creditor's default which would be the triggering event.

In his trial brief, the plaintiff points out that reaffirmation agreements are enforceable only to the extent they would be enforceable under applicable nonbankruptcy law. *See* 11 U.S.C. § 524(c). The plaintiff further points out that reaffirmation agreements must be strictly construed in favor of the debtor. *See Schott v. WYHY Federal Credit Union (In re Schott),* 282 B.R. 1, 8 (10th Cir. BAP 2002).

■ Because the underlying debt comprises an Ohio judgment and because the parties executed their reaffirmation agreement in Ohio, the law of Ohio will govern. *See id.* at 7. The plaintiff argues that under Ohio law, the defendant is equitably estopped from declaring him in default of the payment schedule set forth in the reaffirmation agreement.

■ Equitable estoppel precludes a party from taking a contrary position, where the party, by its conduct, has induced another to change his position in good faith reliance upon that conduct. *State ex rel. Cities Service Oil Co. v. Orteca,* 63 Ohio St.2d 295, 409 N.E.2d 1018 (1980). Continual acceptance of late payments by a creditor can induce a debtor into believing in good faith that late payments are acceptable. When this occurs, the creditor is equitably estopped from declaring a default and exercising its contractual rights unless and until the credi-

tor notifies the debtor that henceforth strict compliance with the payment dates will be required. *Slusser v. Wyrick,* 28 Ohio App.3d 96, 502 N.E.2d 259 (1986).

In the present case, the defendant never gave any notice to the debtor that strict compliance with the payment dates was required. Even when two of the plaintiff's checks were dishonored by his bank, the defendant accepted a cashier's check from the plaintiff to redeem the two instruments. Furthermore, the reaffirmation agreement did not contain a specific provision indicating that the defendant's acceptance of a late payment did not constitute a waiver of its rights under the agreement. *Cf. Pizarro v. Credit Acceptance Corp.,* 2001 WL 1263682 at *4 (Ohio App. 10 Dist. Oct.23, 2001) (holding that acceptance of late payments does not result in estoppel when the agreement contains a specific provision stating that the creditor's acceptance of a later payment did not constitute a waiver of any of its rights under the agreement).

In the absence of any argument to the contrary by the defendant, the Court finds that the defendant's acceptance of late payments did, in fact, induce the plaintiff to believe in good faith that late payments were acceptable. To allow the defendant to attempt to collect the balance of $15,000.00 based on a default clause in the reaffirmation agreement would clearly prejudice the plaintiff. Therefore, the Court concludes that the defendant is estopped from declaring a default on the basis that the plaintiff failed to make his final payment on or before November 1, 2002. Moreover, even if such a default occurred, strictly speaking the clause in question would not have been triggered.

Based on the foregoing, the Court determines that any amounts owed by the plaintiff prepetition to the defendant in excess of $4,500.00 were discharged pursuant to the order of discharge dated August 27, 2001. Upon full payment of the $4,500.00, the defendant shall release its judgment lien per the reaffirmation agreement and shall cease further collection efforts against the plaintiff for the debt in question. *See* 11 U.S.C. § 524(a)(2).

**IT IS SO ORDERED.**